# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

BARTLEY DAMIEN LEE,

     Petitioner,

vs.

JACK PALMER, et al.,

     Respondents.

Case No. 3:10-cv-00355-LRH-VPC

**ORDER**

Before the court are the second amended petition for writ of habeas corpus (#32), respondents' answer (#64), and petitioner's reply (#69). The court finds that relief is not warranted, and the court denies the second amended petition.

On August 16, 2005, petitioner bought a five-gallon can of gasoline. Petitioner went to his brother's house, lit the can on fire, knocked down and dazed his brother, and threw the can into the house. The house caught fire. Petitioner's brother escaped the house and called police. Petitioner was arrested soon thereafter. He gave a statement to deputies of the Washoe County Sheriff. Upon booking at the Washoe County Detention Facility, he was given a psychological evaluation in the infirmary because he said that he was hearing voices. Petitioner was prescribed Geodon, an anti-psychotic medication.

Petitioner agreed to plead guilty to one count of attempted murder with the use of a deadly weapon, in exchange for the dismissal of other charges. Ex. 7 (#14). Attempted murder is punished by a minimum sentence of not less than two years and a maximum sentence of not more than twenty years. Nev. Rev. Stat. § 193.330(1)(a)(1). The minimum sentence cannot exceed 40% of the

maximum sentence.  Nev. Rev. Stat. § 193.130(1).  Pursuant to the deadly-weapon-enhancement statute in effect at the time, petitioner would receive an equal and consecutive sentence for the use of a deadly weapon.  Nev. Rev. Stat. § 193.165(1) (2004).  The court sentenced petitioner to a minimum term of 32 months and a maximum term of 144 months for attempted murder, with an equal and consecutive sentence for the use of a deadly weapon.  Ex. 13 (#14).

Petitioner filed a post-conviction habeas corpus petition in state district court.  Ex. 14 (#14). The state district court appointed counsel, who filed a supplemental petition.  Ex. 28 (#15).  The parties stipulated that, while in the Washoe County Detention Facility, petitioner had delivered to a jail officer an inmate request form that informed the judge that he wished to appeal the judgment but that no appeal was processed.  Ex. 30 (#15).  The Nevada Supreme Court noted that neither a stipulation nor a court order creates jurisdiction where jurisdiction does not otherwise exist, and the court directed petitioner's post-conviction counsel to substantiate the claims that petitioner delivered an inmate request form to a jail officer and that the trial judge received the form.  Ex. 35 (#15). Counsel was unable to provide the required proof.  Ex. 39, 41 (#15).  The Nevada Supreme Court then dismissed the appeal for lack of jurisdiction.  Ex. 45 (#15).  This attempt to directly appeal the judgment is the subject of ground 2, which the court discusses below.

The case returned to the district court, which held an evidentiary hearing.  Ex. 50 (#16).  The district court then denied the petition.  Ex. 55 (#16).  Petitioner appealed, and the Nevada Supreme Court affirmed.  Ex. 79 (#17).

Petitioner then filed in the state district court a motion to dismiss his guilty plea.  Ex. 82 (#17).  The state district court denied the motion on its merits.  Ex. 90 (#17).  Petitioner appealed. The Nevada Supreme Court affirmed, but ruled that the petition should have been denied because of inexcusable delay.  Ex. 96 (#17).

Petitioner then commenced this action.  The original petition (#9) contained defects, and petitioner filed a first amended petition (#10).  The court dismissed (#11) ground 3 of the amended petition because it alleged an error in the state post-conviction proceedings, and such errors are not addressable in federal habeas corpus.  See Franzen v. Brinkman, 877 F.2d 26, 26 (9th Cir. 1989). Respondents filed their first motion to dismiss (#12), arguing that petitioner had not exhausted his

1    remaining two grounds for relief.  The court determined that petitioner had exhausted both of his

2    grounds.  The court also appointed counsel.  Order (#22).

3           Petitioner, now represented by counsel, filed a second amended petition (#32).  Respondents

4    filed their second motion to dismiss (#36).  The court granted the motion in part, finding that ground

5    5 of the second amended petition was unexhausted.  Order (#54).  The remaining grounds have been

6    briefed on their merits.

7           Congress has limited the circumstances in which a federal court can grant relief to a

8    petitioner who is in custody pursuant to a judgment of conviction of a state court.

9           An application for a writ of habeas corpus on behalf of a person in custody pursuant to the
       judgment of a State court shall not be granted with respect to any claim that was adjudicated
10      on the merits in State court proceedings unless the adjudication of the claim—

11      (1) resulted in a decision that was contrary to, or involved an unreasonable application of,
       clearly established Federal law, as determined by the Supreme Court of the United States; or
12
       (2) resulted in a decision that was based on an unreasonable determination of the facts in
13      light of the evidence presented in the State court proceeding.

14    28 U.S.C. § 2254(d).  "By its terms § 2254(d) bars relitigation of any claim 'adjudicated on the

15    merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)."  Harrington v.

16    Richter, 131 S. Ct. 770, 784 (2011).

17      Federal habeas relief may not be granted for claims subject to § 2254(d) unless it is shown
       that the earlier state court's decision "was contrary to" federal law then clearly established in
18      the holdings of this Court, § 2254(d)(1); Williams v. Taylor, 529 U.S. 362, 412 (2000); or
       that it "involved an unreasonable application of" such law, § 2254(d)(1); or that it "was
19      based on an unreasonable determination of the facts" in light of the record before the state
       court, § 2254(d)(2).
20

21    Richter, 131 S. Ct. at 785.  "For purposes of § 2254(d)(1), 'an unreasonable application of federal

22    law is different from an incorrect application of federal law.'"  Id. (citation omitted).  "A state

23    court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded

24    jurists could disagree' on the correctness of the state court's decision."  Id. (citation omitted).

25      [E]valuating whether a rule application was unreasonable requires considering the rule's
       specificity.  The more general the rule, the more leeway courts have in reaching outcomes in
26      case-by-case determinations.

27    Yarborough v. Alvarado, 541 U.S. 652, 664 (2004).

28

1
2
3

> Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court.

4    Richter, 131 S. Ct. at 786.

5
6
7

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

8    Id. at 786-87.

9    When reviewing the state-court decision under § 2254(d), this court is limited to the record

10   that was before the state court.  Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011).  For this reason,

11   respondents argue that the court cannot consider petitioner's exhibits 101, 102, 104, 105, 108, 109,

12   111, 112, 113, 114, and part of 110 when reviewing whether the state-court determinations were

13   contrary to, or unreasonable applications of, clearly established federal law.[1]  Rule 10 of the Nevada

14   Rules of Appellate Procedure defines what the record is:

15
16

> (a) The Trial Court Record. The trial court record consists of the papers and exhibits filed in the district court, the transcript of the proceedings, if any, the district court minutes, and the docket entries made by the district court clerk. . . .

17   (b) The Appellate Court Record.

18
19
20

> (1) The Appendix. For the purposes of appeal, the parties shall submit to the Supreme Court copies of the portions of the trial court record to be used on appeal, including all transcripts necessary to the Supreme Court's review, as appendices to their briefs. Under Rule 30(a), a joint appendix is preferred.

21   Based upon that rule, the challenged exhibits are not part of the state-court record on appeal.[2]

22   Exhibit 101 is the transcript of petitioner's interview with the deputies.  The pre-sentence

23   investigation report referred to the interview, and counsel knew that the interview occurred because

24   he cited petitioner's confession as a reason why he advised petitioner to accept a plea bargain, but

25
26
27

[1]Respondents filed exhibits 1-99 (#14 through #17).  Petitioner filed exhibits 100-114 (#33).

28   [2]Nevada's rule is nothing unusual.  Rule 10 of the Federal Rules of Appellate Procedure defines the record on appeal in largely the same way.

the transcript itself was not filed in the state district court.  Exhibits 104, 105, 108, and parts of 110 are letters to which witnesses referred in the evidentiary hearing, but these letters were not filed in the state district court.  Exhibits 102, 109, and part of 110 are documents filed in other court cases. These documents were not filed in the state district court.  The state district court or the Nevada Supreme Court could take judicial notice of the documents, but nothing in the record shows that the state courts actually did take judicial notice of them.  Exhibit 111 is a copy of petitioner's medical records at the Washoe County Detention Center.  The pre-sentence investigation report refers to petitioner's medical history, but the medical records themselves were not filed in the state district court.  Exhibits 112 through 114 are information sheets about medications that petitioner took. These documents were not filed in the state district court.  The court will not consider them when deciding whether the state-court determinations are due deference pursuant to 28 U.S.C. § 2254(d)(1).

Ground 1 is a claim that petitioner's counsel, Bruce Lindsay, provided ineffective assistance because Lindsay allowed petitioner to plead guilty without a determination of competence.  Part of ground 4 is a related claim that petitioner's plea was unknowing and involuntary because of petitioner's addiction, mental illness, emotional instability, and the impact of prescribed medications upon petitioner's intellectual functioning.

"[T]he right to counsel is the right to the effective assistance of counsel."  McMann v. Richardson, 397 U.S. 759, 771 & n.14 (1970).  A petitioner claiming ineffective assistance of counsel must demonstrate (1) that the defense attorney's representation "fell below an objective standard of reasonableness," Strickland v. Washington, 466 U.S. 668, 688 (1984), and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," id. at 694.  "[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one."  Id. at 697.

Strickland expressly declines to articulate specific guidelines for attorney performance beyond generalized duties, including the duty of loyalty, the duty to avoid conflicts of interest, the

1  duty to advocate the defendant's cause, and the duty to communicate with the client over the course

2  of the prosecution.  466 U.S. at 688.  The Court avoided defining defense counsel's duties so

3  exhaustively as to give rise to a "checklist for judicial evaluation of attorney performance. . . .  Any

4  such set of rules would interfere with the constitutionally protected independence of counsel and

5  restrict the wide latitude counsel must have in making tactical decisions." Id. at 688-89.

6       Review of an attorney's performance must be "highly deferential," and must adopt counsel's

7  perspective at the time of the challenged conduct to avoid the "distorting effects of hindsight."

8  Strickland, 466 U.S. at 689.  A reviewing court must "indulge a strong presumption that counsel's

9  conduct falls within the wide range of reasonable professional assistance; that is, the defendant must

10 overcome the presumption that, under the circumstances, the challenged action 'might be considered

11 sound trial strategy.'"  Id. (citation omitted).

12      The Sixth Amendment does not guarantee effective counsel per se, but rather a fair

13 proceeding with a reliable outcome.  See Strickland, 466 U.S. at 691-92.  See also Jennings v.

14 Woodford, 290 F.3d 1006, 1012 (9th Cir. 2002).  Consequently, a demonstration that counsel fell

15 below an objective standard of reasonableness alone is insufficient to warrant a finding of

16 ineffective assistance.  The petitioner must also show that the attorney's sub-par performance

17 prejudiced the defense.  Strickland, 466 U.S. at 691-92.  There must be a reasonable probability that,

18 but for the attorney's challenged conduct, the result of the proceeding in question would have been

19 different.  Id. at 694.  "A reasonable probability is a probability sufficient to undermine confidence

20 in the outcome."  Id.

> Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult.  The standards created by Strickland and § 2254(d) are both "highly deferential," . . . and when the two apply in tandem, review is "doubly" so . . . .  The Strickland standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

26 Harrington v. Richter, 131 S. Ct. 770, 788 (2011) (citations omitted).

27      The standard for determining competence to plead guilty is the same as the standard for

28 determining competence to stand trial.  Godinez v. Moran, 509 U.S. 389, 398-99 (1993).  To stand

1  trial, a defendant must have both "'sufficient present ability to consult with his lawyer with a

2  reasonable degree of rational understanding' and 'a rational as well as factual understanding of the

3  proceedings against him.'" Id. at 396 (quoting Dusky v. United States, 362 U.S. 402 (1960))

4  (internal quotations omitted).

5      A defendant's guilty plea must be entered knowingly and voluntarily, and the court record

6  must reflect that fact.  Brady v. United States, 397 U.S. 742, 748 (1970); Boykin v. Alabama, 395

7  U.S. 238, 242-43 (1969).

8      On these issues, the Nevada Supreme Court held:

9   Lee contends that the district court erred by concluding that the issue of whether his guilty
    plea was validly entered was not properly raised on post-conviction.  Lee asserts that he
10  "raised the issue of his competence to enter a guilty plea in a petition that was timely filed in
    the correct court."
11
    The district court found that "Lee also orally raised a claim that his plea was not knowing
12  and voluntary.  This issue was not raised in the Petition.  However, the claim that the plea
    was not voluntary is belied by the record, including the transcripts and the Plea Agreement."
13  It is evident from this finding that the district court considered Lee's issue on the merits and
    determined that it was belied by the record.
14
    Our review of the record on appeal reveals that the district court's finding is supported by
15  substantial evidence and is not clearly wrong.  We further note that defense counsel testified
    that both he and the public defender initially assigned to the case considered Lee's
16  competency and determined that he understood what was happening with regard to the guilty
    plea agreement and the sentencing proceeding.  And we conclude from these circumstances
17  that Lee has not demonstrated that the district court erred.

18  Ex. 79, at 3-4 (#17) (footnote omitted).  The state district court's holdings on the matter were:

19  The first [issue] involves a claim of competency.  No evidence regarding competency was
    offered at the hearing. . . .
20
    At the hearing, Mr. Lee also orally raised a claim that his plea was not knowing and
21  voluntary.  This issue was not raised in the Petition.  However, the claim that the plea was
    not voluntary is belied by the record, including the transcripts and the Plea Agreement.
22

23  Ex. 55, at 1 (#16).  At the evidentiary hearing, Lindsay testified:

24  I never remember Bart saying, "Bruce, I don't want to take the plea.  I don't want to go
    forward."
25
    And I would just like to explain, he had given a full confession to the police after he was
26  picked up, before I ever met him.  He'd seen—I'm going to say Eric Nickel, the public
    defender, before—I think that's his name; I apologize if I've got it wrong—but before I had
27  ever seen him.  And that went to the point that I think Rebecca, at some point, didn't think
    that he was mentally competent.  And Eric and I said—we both had discussions with him,
28  and we feel like he's talking to us very competently.

1  Ex. 50, at 33-34 (#16).  Lindsay also testified:

2      That [competency] was raised by Rebecca Druckman at the first hearing I ever had with him.
       And Eric Nickel, I believe, was in the audience and came up and spoke with me, and we
3      both felt that he was completely fine.  He was, you know, cognitive, he was articulate, and
       he had given a very articulate statement as to what had happened to the police before he'd
4      ever called me.

5      And I don't know how long he waited before he got a hold of me, but he'd already given a
       full statement to the police, which makes it difficult.  You run through the facts and explain
6      why he did what he did, and he talked to the police very articulately on the date that it
       happened.
7

8  Id. at 35-36.  This was not evidence that petitioner was incompetent.  This was evidence that, at

9  least to counsel's understanding, petitioner was competent.  Nothing in the transcript of the

10 arraignment indicates that petitioner was incompetent.  Petitioner understood the questions that were

11 asked of him.  Two exchanges stand out.  First, petitioner corrected the prosecutor on the address of

12 the house that he burned.  Ex. 6, at 7-8 (#14).  Second, the attorney who stood in for Lindsay

13 explained how the deadly-weapon enhancement in effect at the time would affect his sentence, and

14 petitioner understood that.  Id. at 8.  The PSI report shows that petitioner received a psychological

15 evaluation upon booking in jail and was prescribed an anti-psychotic.  Counsel, knowing that, might

16 reasonably have thought that a further evaluation would be useful.  However, counsel, having

17 worked with and having observed petitioner, might also reasonably have thought that the medication

18 was working.  Without any other evidence presented, the state court determinations were reasonable

19 applications of Strickland and Dusky.  28 U.S.C. § 2254(d)(1).  Ground 1 and the part of ground 4

20 that concerns petitioner's mental condition are without merit.

21     Ground 2 is a claim that the Nevada Supreme Court denied petitioner an equal and fair

22 opportunity to exercise his direct-appeal rights when that court held that petitioner had failed to

23 prove under the prison mailbox rule that he had timely appealed.  Petitioner has presented two

24 theories why the Nevada Supreme Court's dismissal of his attempt to file a direct appeal is

25 unconstitutional.  First, in the reply, petitioner argues that the Nevada Supreme Court's decision was

26 contrary to, or an unreasonable application of, Houston v. Lack, 487 U.S. 266 (1988).  However,

27 Houston is not a federal constitutional decision.  The Court applied Rule 4 of the Federal Rules of

28 Appellate Procedure to prisoners filing appeals from adverse judgments in habeas corpus petitions

1    and determined that a notice of appeal is deemed filed when handed to a prison official for mailing

2    to the court.  Nevada has adopted the same rule for direct appeals.  Kellogg v. Journal

3    Communications, 835 P.2d 12, 13 (Nev. 1992).  However, nothing in Houston required the Nevada

4    Supreme Court to adopt that rule.  Consequently, the Nevada Supreme Court's decision in

5    petitioner's attempted direct appeal cannot be contrary to, or an unreasonable application of, clearly

6    established federal law.  Carey v. Musladin, 549 U.S. 70, 77 (2006).  Second, in the petition itself,

7    petitioner argues that because the Nevada Supreme Court allows parties to stipulate to facts, the

8    requirement that petitioner prove that a notice of appeal was mailed to the state district court

9    violated his rights under the Equal Protection Clause.  Petitioner cites to no decision of the Supreme

10   Court of the United States that has clearly established such a right to enforce a stipulation of facts.

11   Furthermore, what happened in petitioner's case does not appear to be out of the ordinary.  In

12   establishing the prison mailbox rule, the Nevada Supreme Court held:

13           The United States Supreme Court, construing federal rules identical in all relevant respects
             to NRAP 4, held that a notice of appeal submitted by a prisoner acting in proper person must
14           be deemed "filed" for purposes of determining timeliness on the date it is delivered into the
             hand of a prison official. . . .  Although this ruling is not binding on this court in our
15           interpretation of the requirements of our rules of appellate procedure, we find the reasoning
             of the United States Supreme Court to be sound, and the arguments of appellants in this and
16           similar cases to be compelling.  Further, because the prisons already keep logs of when
             notices of appeal are received from prisoners, it would not create any additional burden on
17           the prisons, nor would it create any significant burden on the courts, to conclude, as did the
             United States Supreme Court, that a proper person notice of appeal is filed on the date of
18           delivery to a prison official.  We therefore adopt the holding and reasoning of the United
             States Supreme Court.
19

20   Kellogg, 835 P.2d at 13 (citing Houston) (emphasis added).  Kellogg contemplated that a petitioner

21   wanting to use the prison mailbox rule would be able to prove when he delivered the notice of

22   appeal to a prison official by referring to the mail logs.  This rule is no different from what Houston

23   contemplated.  487 U.S. at 275-76.  In multiple unpublished opinions, the Nevada Supreme Court

24   has directed the state attorney general to provide prison appeal logs to prove when a prisoner

25   delivered a notice of appeal to a prison official, and the court has dismissed appeals when the logs

26   show no such delivery.  See, e.g., Schenker v. State, 2009 WL 1473200 (Nev. 2009).  The only

27   difference between those cases and petitioner's attempt at a direct appeal is that the Nevada

28

-9-

1  Supreme Court told petitioner's attorney to provide the proof.  Petitioner was not treated differently

2  than any other person in the same situation.  Ground 2 is without merit.

3       Ground 3 is a claim that Lindsay provided ineffective assistance because he failed to consult

4  with petitioner about a direct appeal.  The analysis of whether a defendant was denied a direct

5  appeal due to ineffective assistance of counsel has four steps.  First, has the defendant instructed

6  counsel to file an appeal or asked not to take an appeal?

7       [A] lawyer who disregards specific instructions from the defendant to file a notice of appeal
        acts in a manner that is professionally unreasonable. . . .   At the other end of the spectrum, a
8       defendant who explicitly tells his attorney not to file an appeal plainly cannot later complain
        that, by following his instructions, his counsel performed deficiently.
9

10  Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000).  Second, if the defendant did not give instructions,

11  has counsel consulted with the defendant about a direct appeal?

12      We employ the term "consult" to convey a specific meaning-advising the defendant about
        the advantages and disadvantages of taking an appeal, and making a reasonable effort to
13      discover the defendant's wishes.  If counsel has consulted with the defendant, the question of
        deficient performance is easily answered: Counsel performs in a professionally unreasonable
14      manner only by failing to follow the defendant's express instructions with respect to an
        appeal.
15

16  Id. at 478 (emphasis added).  Third, if counsel did not consult with the defendant about the direct

17  appeal, was that deficient performance by counsel?

18      [C]ounsel has a constitutionally imposed duty to consult with the defendant about an appeal
        when there is reason to think either (1) that a rational defendant would want to appeal (for
19      example, because there are nonfrivolous grounds for appeal), or (2) that this particular
        defendant reasonably demonstrated to counsel that he was interested in appealing. In making
20      this determination, courts must take into account all the information counsel knew or should
        have known.
21

22  Id. at 480 (citation omitted).  Fourth, if the lack of consultation was deficient performance, was the

23  defendant prejudiced?  "[T]o show prejudice in these circumstances, a defendant must demonstrate

24  that there is a reasonable probability that, but for counsel's deficient failure to consult with him

25  about an appeal, he would have timely appealed."  Id. at 484.

26      On this issue, the Nevada Supreme Court held:

27      Lee contends that the district court abused its discretion by concluding that he was not
        deprived of his right to an appeal.  Lee claims that he advised defense counsel that he wanted
28      to appeal his sentence and conviction and defense counsel failed to perfect an appeal.

-10-

> A claim that counsel failed to perfect an appeal is a claim of ineffective assistance of counsel. "[A]n attorney has a duty to perfect an appeal when a convicted defendant expresses a desire to appeal or indicates dissatisfaction with a conviction." Lozada v. State, 110 Nev. 349, 354, 871 P.2d 944, 947 (1994). When an attorney does not fulfill this duty, he provides ineffective assistance that prejudices his client by depriving him of the right to an appeal. Id. at 354-57, 871 P.2d at 947-49; see also Hathaway v. State, 119 Nev. 248, 254, 71 P.3d 503, 507 (2003) (prejudice is presumed if a petitioner demonstrates that counsel ignores his request for an appeal).
>
> Here, after receiving the evidence submitted at the briefing, the district court found that the alleged failure to appeal was without merit. We note that defense counsel testified that Lee did not ask him to file a direct appeal on the day they were in court and Lee did not ask him to file a direct appeal in the letter he sent after sentencing. Further, Lee testified that he did not "make clear in no uncertain terms that [he] wished [defense counsel] would pursue an appeal" and that is why he filed the inmate request form seeking an appeal. We conclude that the district court's finding is supported by substantial evidence and that Lee has failed to demonstrate that the district court abused its discretion in this regard.

Ex. 79, at 4-5 (#17). Exhibit 17 (#14) is a notice of evidence that petitioner requested counsel to appeal his case. Attached is a letter from petitioner to Lindsay, stating, "Dear Bruce, after sentencing Friday I realized I have some grounds for appeal and I am asking that you file an appeal of conviction." Petitioner might have referred to this letter in the evidentiary hearing. Ex. 50, at 14 (#16). However, Lindsay was not asked about this letter in his testimony at the evidentiary hearing, and there was no proof that Lindsay ever received it. The other evidence given at the evidentiary hearing is consistent with what the Nevada Supreme Court held. Its determination that petitioner did not ask Lindsay to file an appeal was a reasonable application of Flores-Ortega.

It does not appear that Lindsay consulted, as the term is used in Flores-Ortega, with petitioner about an appeal. As noted above, petitioner did not demonstrate to Lindsay that he wanted to appeal. It also does not appear that a reasonable defendant in petitioner's situation would have wanted to appeal. Petitioner testified at the evidentiary hearing that before sentencing he received discovery materials from the prosecutor. The materials included security-camera photographs of petitioner bleeding at a market. Apparently police responded to the market and called a taxicab to take him home. Petitioner then asked the cab driver to stop at a gas station, where he bought the can of gasoline that he used to burn his brother's house. Petitioner felt that the prosecution had withheld exculpatory evidence, because the police and the cab driver could have stopped him but did not, and he wanted to withdraw his plea. Ex. 50, at 10-12 (#16).

-11-

1    Even assuming that the evidence was exculpatory and that the failure to disclose it made

2    petitioner's guilty plea involuntary or unknowing, petitioner did not have a non-frivolous ground for

3    appeal.  In Nevada, petitioner may not challenge the validity of a guilty plea for the first time on

4    direct appeal.  Instead, petitioner must first move to withdraw the guilty plea in district court or file

5    a post-conviction habeas corpus petition in district court.  Bryant v. State, 721 P.2d 364, 367-68

6    (Nev. 1986), superseded by statute on other grounds, Hart v. State, 1 P.3d 969 (Nev. 2000).  The

7    Nevada Supreme Court reasonably could have concluded that Lindsay would have no reason to

8    think that petitioner had any non-frivolous grounds for appeal.  Ground 3 is without merit.

9         The part of ground 4 that the court has not discussed above is a claim that petitioner's guilty

10   plea was involuntary and unknowing because Lindsay misrepresented the potential sentence that

11   petitioner could receive.  Petitioner quotes some of Lindsay's comments at the sentencing hearing,

12   arguing that Lindsay thought that the highest maximum term that petitioner could have received was

13   10 years, plus an equal and consecutive term for use of a deadly weapon.  As noted above, the

14   highest possible maximum term for attempted murder is 20 years.  Nev. Rev. Stat.

15   § 193.330(1)(a)(1).  Lindsay stated:

16        [MR. LINDSAY:] I ask you to follow the recommendation of the Parole and Probation
          Department.  I believe it asks for 32 months, Your Honor.  And in fact, Your Honor, he has
17        120 months, or something at the high end, on this recommendation.  And that's going back
          to back.  That's wild, Your Honor. . . .

18
          So, Your Honor, I ask you to follow the recommendation and, if anything, to give him the
19        benefit of the low end.  Thank you, Your Honor.

20        THE COURT: And in your judgment, the low end is what?

21        MR. LINDSAY: Well, technically, it's 24, Your Honor.  And I could tell you that I don't
          know whether he's going to be—as you know, it's a game out there.  I don't know.  I don't
22        know if he's going to be released on the low end or not, because, as you know, they may be
          having him serving out ten years before he goes to the board and another ten before he flat-
23        times.

24   Ex. 12, at 4-5 (#14) (emphasis added).  As noted above in the court's discussion of ground 1 and the

25   other parts of ground 4, the Nevada Supreme Court affirmed the district court's decision that the

26   claim was belied by the record.  Ex. 79, at 3-4 (#17).

27        Petitioner's argument regarding Lindsay's statement has two flaws.  First, Lindsay was

28   speaking at the sentencing hearing.  A misstatement on the potential sentence after petitioner

-12-

1    pleaded guilty does not mean that petitioner's plea was involuntary and unknowing.  A misstatement

2    on the potential sentence at the arraignment, when petitioner entered his plea, might have made the

3    plea involuntary or unknowing.  However, at the arraignment petitioner was informed of the correct

4    potential sentences.  The guilty plea agreement informed petitioner in writing what the potential

5    sentences were.  Ex. 7, at 3 (#14).  At the arraignment, the attorney who stood in for Lindsay

6    informed petitioner of the correct potential sentences.  Ex. 6, at 8.[3]  The trial judge then explained to

7    petitioner what the correct range of sentences was, and that the court could impose any sentence

8    within that range that it felt was appropriate.  Id. at 10.  At the evidentiary hearing on the state

9    habeas corpus petition, Lindsay testified that before the arraignment he went to petitioner and

10   personally explained the plea agreement to him.  Ex. 50, at 34-35 (#16).  Petitioner knew what the

11   potential sentences could be at the time that he needed to know them.

12        Second, Lindsay's statements do not show that he was misinformed about the possible range

13   of sentences permitted by statute.  When Lindsay said, "And, in fact, Your Honor, he has 120

14   months, or something at the high end, on this recommendation," he was referring not to the statute,

15   but to the recommendation of the pre-sentence investigation.  At worst, he was unsure about the

16   actual recommendation for the maximum term.

17        Also in this part of ground 4, petitioner claims that Lindsay promised petitioner that he

18   would spend only 5 years, 8 months in prison if he accepted the plea bargain.  Petitioner testified to

19   that effect at the evidentiary hearing.  Ex. 50, at 18 (#16).  However, petitioner later testified that he

20   was aware of the sentencing range but that he was hoping for 5 years, 8 months.  Id. at 25.  Lindsay

21   testified that he did not offer petitioner 5 years, 8 months—he stated it as 58 months—for a

22   sentence, but that he would try to get the low end of the sentencing range.  Id. at 34.  Lindsay later

23   realized that that time could be the result of two consecutive minimum terms of 34 months.  Id. at

24   39-40.  Based upon this testimony, the Nevada Supreme Court reasonably could have concluded

25   that petitioner was not misinformed about the sentence that he could receive, and then the Nevada

26

27

28        [3]The attorney then discussed a sentence of two years to ten years, but he was using that
     possible sentence as an example of how the deadly-weapon enhancement would work.  Ex. 6, at 8-9.

1   Supreme Court reasonably could have concluded that petitioner's plea was entered knowingly and

2   voluntarily.  28 U.S.C. § 2254(d).  The remaining part of ground 4 is without merit.

3          To appeal the denial of a petition for a writ of habeas corpus, Petitioner must obtain a

4   certificate of appealability, after making a "substantial showing of the denial of a constitutional

5   right."  28 U.S.C. §2253(c).

6          Where a district court has rejected the constitutional claims on the merits, the showing
           required to satisfy §2253(c) is straightforward:  The petitioner must demonstrate that
7          reasonable jurists would find the district court's assessment of the constitutional claims
           debatable or wrong.
8

9   Slack v. McDaniel, 529 U.S. 473, 484 (2000).  After reviewing the matter, the court finds that a

10  certificate of appealability should issue on all four remaining grounds of the second amended

11  petition.

12         IT IS THEREFORE ORDERED that the second amended petition for writ of habeas corpus

13  (#32) is **DENIED**.  The clerk of the court shall enter judgment accordingly.

14         IT IS FURTHER ORDERED that a certificate of appealability is **GRANTED** on the

15  following issues:

16         1.      Whether the court was correct in its determination that the Nevada Supreme Court
                   reasonably applied clearly established federal law when ruling that the lack of a request for a
17                 competency evaluation was not ineffective assistance of counsel;

18         2.      Whether the court was correct in its determination that the Nevada Supreme Court's
                   dismissal of petitioner's attempt at a direct appeal was not contrary to, or an unreasonable
19                 application of, clearly established federal law;

20         3.      Whether the court was correct in its determination that the Nevada Supreme Court
                   reasonably applied clearly established federal law when ruling that counsel's lack of
21                 consultation with petitioner about a direct appeal was not ineffective assistance of counsel;
22                 and

23         4.      Whether the court was correct in its determination that the Nevada Supreme Court
                   reasonably applied clearly established federal law when ruling that petitioner's plea of guilty
24                 was entered knowingly and voluntarily.

25  DATED this 30th day of September, 2013.

26

27         _____
28         LARRY R. HICKS
           UNITED STATES DISTRICT JUDGE